UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERARD J. REMILLARD, JR.,

    Plaintiff,                                    CIVIL ACTION NO. 05-CV-71413-DT

    v.                                                DISTRICT JUDGE LAWRENCE P. ZATKOFF

COMMISSIONER OF                          MAGISTRATE JUDGE DONALD A. SCHEER
SOCIAL SECURITY,

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

RECOMMENDATION:  Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of sedentary work.

\*    \*    \*

Plaintiff filed an application for Social Security disability insurance benefits on September 11, 2000, alleging that he had become disabled and unable to work on January 20, 2000, at age 43, due to carpal tunnel syndrome, back and shoulder pain, asthma and mental depression. Benefits were denied by the Social Security Administration. A requested de novo hearing was held on May 5, 2004[1], before Administrative Law Judge (ALJ) Alfred Varga. The ALJ found that the claimant retained the residual functional capacity to perform

---

[1] An earlier administrative hearing was held in December 2001 (TR 216-240), which resulted in a decision to deny benefits (TR 148-149).  The Appeals Council vacated that decision in October 2002, and remanded the case to further evaluate claimant's mental impairments (TR 156-158).

a limited range of sedentary work. The ALJ restricted claimant from work requiring driving, climbing, overhead reaching and fine finger dexterity. There would also be no exposure to environmental pollutants, and no work around unprotected heights or hazardous machinery. The Law Judge further determined that Plaintiff should have limited contact with the public, co-workers and supervisors. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits.  The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 48 years old at the time of the administrative hearing. He had graduated from college, and had been employed during the relevant past as a forklift operator and assembler for General Motors (TR 61, 69).  As a laborer performing various job duties for the automaker, he did a lot of walking and standing. He had to constantly bend down and reach over his head.  He was required to lift upwards of 25 pounds on a regular basis (TR 70-72, 233). Claimant stopped working June 2000, due to bilateral carpal tunnel syndrome, joint pain, asthma and mental depression[2] (TR 220-224, 231-232). Plaintiff asserted that he remained disabled due to severe pain and numbness in both his hands and wrists (TR 252). He also experienced chronic knee and shoulder pain, as well as respiratory difficulties due to asthma (TR 245, 252). Claimant stated that emotional difficulties, particularly his inability to handle stress, have also prevented him from returning

---

[2]At the time of the hearing, Plaintiff was receiving $1800.00 a month in disability benefits from General Motors (TR 221).  He settled a workers' compensation claim for $40,000 in 2003 (TR 254).

to work (TR 225-226, 247-248). Plaintiff maintained that mental depression prevented him from concentrating for prolonged periods (TR 249).

A Vocational Expert, Dr. Asa Brown, classified Plaintiff's past work as light to heavy, unskilled activity (TR 255). The witness testified that there were no jobs for claimant to perform if his testimony was fully accepted[3] (TR 257). If he were capable of sedentary work, however, there were numerous unskilled bench assembly, sorting, inspection and packaging jobs that he could still perform with minimal vocational adjustment (TR 259-260). These simple, routine jobs were performed in clean air environments and did not require fine finger dexterity. The jobs did not require any overhead reaching or repetitive grasping with either hand. They did not involve working with hazardous machinery or at unprotected heights, or require much interpersonal contact with co-workers, supervisors or the public (TR 258-259).

LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Plaintiff was impaired as result of chronic hand, shoulder and knee pain, asthma and bouts of depression, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's joint pain prevented him climbing or driving. Plaintiff was restricted from overhead reaching, repetitive hand grasping and working around dangerous machinery. The Law Judge further determined that Plaintiff should work in clean air environments and have limited personal contacts.

---

[3] The witness opined that claimant's alleged need to rest several times a day for up to an hour at a time due to chronic fatigue and dizziness would preclude all work activity (TR 258).

**3**

Nevertheless, the ALJ found that the claimant retained the residual functional capacity to perform a significant number of sedentary jobs, as identified by the Vocational Expert.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  Richardson v. Perales, 402 U.S. 389, 401 (1971).  Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).  This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536.  If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff does not challenge the Law Judge's determination that his physical impairments would not interfere with his ability to perform a restricted range of sedentary work. Instead, the claimant maintains that emotional difficulties,

**4**

particularly his inability to handle workplace stress, have prevented him from returning to work. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents him from returning to his previous work or any other substantial, gainful activity existing in the national economy, considering his age, education and work experience.  42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.1505 (2005).

DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that Plaintiff remained capable of performing a significant number of unskilled, sedentary jobs that did not involve much interaction with the public, co-workers or supervisors.  The medical evidence, as a whole, failed to provide objective support for Plaintiff's allegations of a disabling mental disorder. Although the Law Judge found the presence of a mental impairment identified in the A criteria (mental depression), the evidence failed to establish significant functional limitations identified in the four categories of the "B" criteria.

The evidence of record shows that Plaintiff remains capable of performing a variety of daily activities and that he is able to communicate effectively with others.[4]  Dr. Peter Samet, an examining physician, reported in November 2000, that the claimant was independent in his activities of daily living, including his ability to drive (TR 113-114). Plaintiff testified that he enjoyed walking his dog on a regular basis, and was able to do

---

[4]The first area of the B criteria, known as "activities of daily living", includes cleaning, shopping, cooking, maintaining a residence, using the telephone and caring for one's grooming and hygiene. The second area, social functioning, refers to an individual's capacity to interact appropriately and communicate effectively with others, including family, friends and merchants.

**5**

some household chores with the help of his wife (TR 226-227). Dr. Frank Greene, a treating psychiatrist, noted in February 2002, that anti-depressant medications had helped to elevate his mood and increase his energy levels (TR 200). While Plaintiff allegedly had difficulty interacting with others due to depression, he testified that he remained hopeful of completing his dissertation and earning a doctorate degree in education (TR 220, 227-228). Given this evidence, the Law Judge reasonably determined that claimant's daily activities and social functioning were, at most, moderately restricted.

While Plaintiff alleged that his depression interfered with his memory and ability to concentrate,[5] he also indicated that he was able to read, watch television and care for his two children (TR 224-226). The ability to read or watch televison stands in sharp contrast to his allegation that he suffered from a complete inability to concentrate. Dr. Greene reported in June 2003, that Plaintiff was well oriented, logical and goal directed. Sensorium and cognition were said to be intact, and his insight and judgment were not impaired (TR 188-189). Furthermore, the claimant's ability to read, perform household chores and care for his children suggests that he retained at least a minimal level of concentration as would be required for performing the unskilled jobs identified by the Vocational Expert.

The last area of function under the "B" criteria is deterioration or decompensation in work or work-like settings, which refers to the "repeated failure to adapt to stressful circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms." 20 C.F.R. Pt. 404, Subpt. P, App.

---

[5]The third area of function evaluated under the "B" criteria is concentration, persistence, and pace, which refers to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).

6

1, § 12.00(C)(4).  Dr. Greene indicated in June 2003 that the claimant could maintain socially appropriate behavior, and keep up basic standards of neatness and cleanliness. The doctor added that Plaintiff could make simple, work-related decisions, and independently perform routine, repetitive tasks (TR 192-193). Claimant reportedly had the capacity to understand, remember and carry out short, simple instructions (TR 192).  Dr. Greene gave him a GAF rating of 50 (TR 190), which is consistent with the ability to perform simple, routine work activities. No physician imposed a specific work preclusive limitation on claimant's functioning. Although the claimant contended that depression and anxiety caused profound cognitive limitations, he was never hospitalized for psychiatric reasons.            The claimant's depression was no doubt exacerbated by the pain caused by his various physical ailments.  Each condition has apparently improved with the help of medications to the point of no longer being disabling[6].  The medical evidence also failed to show that the claimant has suffered any episodes of decompensation. Plaintiff's ability to speak in a logical, coherent manner while remaining well organized (TR 188) suggests that he does not suffer disabling anxiety, depression or anger. Furthermore, the types of unskilled jobs identified by the Vocational Expert (assembly, sorting and packaging) would not cause a great deal of stress.  These entry level jobs did not involve dealing with the public, co-workers or supervisors (TR 258-259). The Law Judge properly found that the degree of limitation for each of the four B criteria was only moderate and not severe. As a result, Plaintiff did not meet the requirements of the Listing of Impairments.

       Plaintiff relies heavily upon the fact that Dr. Greene described him as totally disabled (TR 136-137). It is well settled that opinions of treating physicians should be given

---

[6]Contrary to Plaintiff's assertion, there was no medical corroboration that side effects from the medications required him to nap in order to relieve chronic fatigue and dizziness.

greater weight than those of one-time examining doctors retained by the government.  Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).  However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985).  Since Dr. Greene offered little objective evidence to support his conclusion of disability, his opinion need not have been given any special weight[7].  Miller v. Secretary, 843 F.2d 221, 224  (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered.  Landsaw v. Secretary, 803 F.2d  211, 213 (6th Cir. 1986).

It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that his testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence.  Such observation is invaluable and should not be discarded lightly.  Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978).  See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

---

[7]The ALJ rejected the doctor's opinion, setting forth persuasive reasons for doing so. As noted by the Law Judge, Dr. Greene's fairly illegible progress notes were unaccompanied by any objective findings supporting his disability conclusion (TR 19). Moreover, a review of the doctor's treatment record shows he documented few objective test results.  Indeed, it appears the doctor's statements were based primarily on Plaintiff's subjective complaints, rather than the objective medical evidence.

**8**

By establishing that he could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated

claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with his significant impairments, the Vocational Expert testified that there were numerous unskilled bench assembly, sorting, inspection and packaging jobs that he could still perform with minimal vocational adjustment (TR 259-260). These simple, routine jobs were performed in clean air environments and did not require fine finger dexterity. The jobs did not require any overhead reaching or repetitive grasping with either hand. They did not involve work with hazardous machinery or at unprotected heights.  They did not require much interpersonal contact with co-workers, supervisors or the public (TR 258-259).

Given the objective clinical findings of the examining physicians of record, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of sedentary work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise.  Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof

as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal.  <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981), <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>Howard v. Secretary of HHS</u>, 932 F.2d 505 (6th Cir. 1991).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. <u>Smith v. Detroit Fed'n of Teachers Local 231</u>, 829 F.2d 1370, 1373 (6th Cir. 1987), <u>Willis v. Secretary of HHS</u>, 931 F.2d 390, 401 (6th Cir. 1991).  Pursuant to Rule 72.1 (d)(2) of the <u>Local Rules of the United States District Court for the Eastern District of Michigan</u>, a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limits are extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                 s/Donald A. Scheer
                                                 DONALD A. SCHEER
                                                 UNITED STATES MAGISTRATE JUDGE

DATED: November 29, 2005

---

### CERTIFICATE OF SERVICE

I hereby certify on May 5, 2005 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically.  I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on May 5, 2005.  **Marc Mulder.**

                                                 s/Michael E. Lang
                                                 Deputy Clerk to
                                                 Magistrate Judge Donald A. Scheer
                                                 (313) 234-5217